IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN KANE, )
    Plaintiff, )
)
vs ) Civil Action No. 11-619
)
ROBERT E. HILER, an individual, and )
MICHAEL SEYBERT, an individual, )
    Defendants. )

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

Presently before the Court is the defendants' motion for partial summary judgment on Counts I, II and IV of the amended complaint. For reasons discussed below, the defendants' motion for partial summary judgment (Document No. 33) will be denied.

The plaintiff, Sean Kane, has filed a civil rights amended complaint against two police officers employed by the City of Beaver Falls, PA: Robert E. Hiler and Michael Seybert.[1] The plaintiff contends that on August 22, 2009, Officers Hiler and Seybert violated his First and Fourth Amendment rights when they used excessive force against him and arrested him without probable cause after he criticized the City of Beaver Falls Police Department.

The record shows that in the afternoon of August 22, 2009, the plaintiff drove to the house of Timothy Tunno, an employee of the plaintiff's landscaping business (Defendants' Statement of Material Facts ["DSMF"] at ¶ 4 and Plaintiff's response thereto). Tunno's house is located on 11th Street in Beaver Falls, PA (Id. at ¶ 5), and the plaintiff drove there to give Tunno

---

[1] The original complaint named as defendants the City of Beaver Falls, Police Officer Hiler, and an unidentified Officer "Doe". In the amended complaint, Officer Hiler and the now identified Officer Seybert are named as the sole defendants.

1

a gas card (Plaintiff's deposition at p. 68). Tunno had been using the plaintiff's work truck, and he parked the vehicle on 11th Street (DSMF at ¶ 7 and Plaintiff's response thereto). Tunno's neighbor, Mark Anthony Waldron, resided two houses away from Tunno's residence, and Waldon took issue with the parking space in which Tunno had parked the vehicle, as it was partially in front of Waldron's residence, and Waldron insisted that the space was intended for his mother to park when she returned from work (Id. at ¶¶ 6-8).

When the plaintiff arrived at the scene, he exited his car and witnessed Waldron and Tunno yelling at each other outside of Waldron's house (Id. at ¶ 9). The plaintiff intervened, and tried to explain to Waldron that Tunno would soon be leaving in the truck, but Waldron began hitting him with his fists (Plaintiff's deposition at pp. 68-69, 79-80). The plaintiff testified that Waldron hit him numerous times in the head, and that he feared for his life (Id. at p. 69). Following the altercation, the plaintiff went to his vehicle and called 911 (DSMF at ¶ 11 and Plaintiff's response thereto).

The defendants were dispatched by Beaver County 911 and directed to 11th Street and 10th Avenue in Beavers Falls (Id. at ¶ 12). A few minutes after the plaintiff's call, the defendants arrived at the scene in uniform and traveling in marked patrol vehicles (Id. at ¶ 14). At that time, the plaintiff was in or near his vehicle, and Waldron was standing on the porch of his residence (Id. at ¶ 16). As to Waldron, the defendants knew him as a dangerous individual who had previously been arrested by the Beaver Falls Police Department for violent crimes (Id. at ¶ 17).

Officer Hiler exited his patrol vehicle and approached the plaintiff to discuss the incident, at which time Hiler observed no visible injuries on the plaintiff (Id. at ¶¶ 19-20). Meanwhile, Officer Seybert approached Waldron to discuss his physical altercation with the plaintiff, and Seybert observed no visible injuries on Waldron (Id. at ¶¶ 21-22).

2

At that juncture, the plaintiff was standing in the middle of the street, and he demanded that Waldron be arrested for assault (Id. at ¶ 23). Officer Hiler testified that the plaintiff was loud and irate about wanting Waldron arrested, and he told the plaintiff several times to calm down (Officer Hiler's deposition at pp. 16-18, 24). Based on the officers' preliminary investigation, they conferred with one another about how to handle the situation (DSMF at ¶ 25 and plaintiff's response thereto).

Having heard both the plaintiff's and Waldron's version of events, and observing no physical injury to either of them, the officers determined that there was insufficient evidence to charge either party with assault (Id. at ¶ 27). Instead, the defendants agreed that non-traffic citations would be issued to the plaintiff and to Waldron for their physical altercation (Id. at ¶ 29). Officer Hiler informed the plaintiff that Waldron would not be arrested for assault (Id. at ¶ 31). Hiler asserts that he also told the plaintiff that Waldron would be issued a citation for either harassment or disorderly conduct (DSMF at ¶ 31).

The plaintiff was dissatisfied with how the defendants were going to handle the situation, and he demanded that they arrest Waldron (DSMF at ¶ 32 and plaintiff's response thereto). Officer Hiler testified that he told the plaintiff to calm down, as they were in the middle of the street, and other people were coming into the area (Officer Hiler's deposition at p. 24). However, the plaintiff testified that other than himself and the two officers, the only people in the area were Tunno (his employee), Mark Medlin (a friend who accompanied the plaintiff to the scene in the plaintiff's vehicle), and Rashada Clanton and her mother, Dorothy Clanton (who live in the neighborhood) (Plaintiff's deposition at pp. 69-70, 75, 89, 107-08).

The record shows that Officer Hiler told the plaintiff several times that he needed to get in his vehicle and leave the scene (DSMF at ¶ 34 and plaintiff's response thereto). The plaintiff

3

admits that the officers told him to leave the area twice (Plaintiff's response to DSMF at ¶ 34). According to the defendants, the plaintiff ignored their orders to leave the scene, and he continued to demand that they arrest Waldron for assault (DSMF at ¶¶ 36-37).

However, the plaintiff contends that after the defendants told him to leave the area a second time, he turned to get into his vehicle to leave, at which time he said: "This is a fuckin' joke. This is the reason that Beaver Falls is in the fuckin' condition it's in." (Plaintiff's deposition at pp. 83-85). According to the plaintiff, after he made the statements, Officer Seybert grabbed him, put him in a choke hold, pushed him against the car, and forced him to the ground, where he landed on his left arm (Id. at pp. 85-88).

The defendants arrested the plaintiff, handcuffed him, placed him in a police vehicle and transported him to the police station (DSMF at ¶ 41 and plaintiff's response thereto). Officer Hiler issued the plaintiff a non-traffic citation for disorderly conduct pursuant to 18 Pa.C.S. § 5503(a)(4), and the plaintiff left the police station (Id. at ¶ 44). On August 24, 2009, Officer Hiler issued Waldron a non-traffic citation for disorderly conduct pursuant to 18 Pa.C.S. § 5503(a)(1) (Id. at ¶ 45).

The plaintiff asserts that as a result of the incident, he felt pain in his left shoulder and went to the Heritage Valley Beaver Emergency Department, where he was examined and released (Plaintiff's Declaration at ¶ 27). The plaintiff was seen by Dr. Carl Sestito, his family physician, and Dr. Donald Campbell for his shoulder pain (Id. at ¶ 29). The plaintiff avers that he sustained a strained shoulder as a result of the incident and was humiliated by the officers' conduct (Id. at ¶ 28). The plaintiff received physical therapy at Signature Rehabilitation, and he recently had surgery on his shoulder (Id. at ¶¶ 30-31).

Due to the defendants' alleged misconduct, the plaintiff filed a four-count amended

4

complaint against them. The plaintiff contends that Officers Hiler and Seybert violated his First Amendment right to free speech (Count I), retaliated against him for exercising his free speech rights (Count II), violated his Fourth Amendment rights by using excessive force against him (Count III), and arrested him without probable cause in violation of his rights under the Fourth Amendment, 42 U.S.C. § 1983 and state law (Count IV). The Court's federal question and supplemental jurisdiction are invoked.

The defendants have moved for partial summary judgment on Counts I, II and IV of the amended complaint. Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). We will deny the defendants' motion for partial summary judgment.

We start with the plaintiff's claim that he was arrested without probable cause (Count IV). The Fourth Amendment prohibits an officer from arresting a citizen except upon probable cause. Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997), quoting Gerstein v, Pugh, 420 U.S. 103, 111 (1975).

While "[p]robable cause to arrest requires more than mere suspicion... it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, "[p]robable cause exists if there is a fair probability that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). "If 'at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated

5

the law, probable cause is present." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000), quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991).

"Generally, the question of probable cause in a section 1983 damage suit is one for the jury, ... particularly ... where the probable cause determination rests on credibility conflicts." Merkle, 211 F.3d at 788. "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding". Id. at 788-89.

In Sharrar, supra, the Court stated: "[t]he determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene." 128 F.3d at 818. "The proper inquiry in a section 1983 claim based on false arrest … is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

As recited above, the defendants arrested the plaintiff for disorderly conduct pursuant to 18 Pa.C.S. § 5503(a)(4). It is provided in 18 Pa.C.S. § 5503(a)(4): "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:… creates a hazardous or physically offending condition by any act which serves no legitimate purpose of the actor."

Under the disorderly conduct statute, "whether 'words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance.'" Gilles v. Davis, 427 F.3d 197, 204 (3d Cir. 2005), quoting Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999). "The cardinal feature of the crime of disorderly conduct is *public unruliness* which can or does lead to tumult and disorder." Commonwealth v. Fedorek, 946

6

A.2d 93, 100 (Pa. 2008), quoting Hock, supra, 728 A.2d at 946 (emphasis in original).

With respect to the disorderly conduct statute here, 18 Pa.C.S. § 5503(a)(4), the Third Circuit Court of Appeals has stated that it "requires proof that a person (1) 'with intent to cause public inconvenience, annoyance, or alarm' (2) 'creates a hazardous or physically offensive condition by any act' that (3) 'serves no legitimate purpose of the actor.'" Snell v. City of York, PA, 564 F.3d 659, 671 (3d Cir. 2009), quoting 18 Pa.C.S. § 5503(a)(4).

As to the specific intent requirement of the statute, it "may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the [actor's] intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." Commonwealth v. Troy, 832 A.2d 1089, 1094 (Pa.Super 2003). Courts have instructed that "[f]orcibly entering or remaining in an area in which one is unwelcome after the police have requested that the person leave may create a hazardous condition and reflect an intent to cause public inconvenience, annoyance or alarm." Diener v. Reed, 77 Fed. Appx. 601, 610 (3d Cir. 2003), citing Commonwealth v. Roth, 531 A.2d 1133, 1137 (Pa.Super. 1987), and Commonwealth v. DeLuca, 597 A.2d 1121 (Pa. 1991).

Thus, police officers may have probable cause to arrest an actor for disorderly conduct if he refuses to obey police orders. See, Startzell v. City of Philadelphia, PA, 533 F.3d 183, 191, 204 (3d Cir. 2008). That is true when police officers are confronted by a crowd of people and fear that the actor's conduct might create a risk of public inconvenience, annoyance or alarm. See, Starzell, supra, 533 F.3d at 189-191; Diener. supra, 77 Fed.Appx. at 603-04, 610-11; and Deluca, supra, 597 A.2d at 1122-23. Likewise, "one who exhibits disorderly behavior in a public place is guilty of disorderly conduct even if that behavior is directed at a single individual." Commonwealth v. Young, 535 A.2d 1141, 1143 (Pa.Super. 1988), appeal denied, 544 A.2d 961

7

(Pa. 1988). Indeed, the Pennsylvania Supreme Court has explained: "there are numerous decisions of this Commonwealth determining evidence to be sufficient to sustain convictions for disorderly conduct where the underlying public acts involve … the private melodramas of two or three people that also cause or create the risk of public disturbance." Fedorek, supra, 946 A.2d at 100 (citing cases).

Under the disorderly conduct statute, "public" is defined as "affecting or likely to affect persons in a place to which the public or a substantial group has access," including "any neighborhood, or any premises which are open to the public." 18 Pa.C.S. § 5503(c). Here, at a minimum, the plaintiff, Mr. Tunno, Mr. Waldron and the two police officers were involved in the incident at 11th Street, which is open to the public and part of a neighborhood in Beaver Falls.

In fact, this neighborhood was known to the defendant officers as a high crime area, as they responded to numerous emergency calls involving violent crimes there (DSMF at ¶ 13). The officers also knew Waldron to be a dangerous individual, as he was previously arrested for violent crimes (Id. at ¶ 17 and plaintiff's response thereto). Hence, to protect the safety of the actors, including themselves, the officers determined that the appropriate action was to get everybody out of the area immediately (Id. at ¶ 28). However, as discussed above, the plaintiff initially refused to obey the officers' orders to get in his vehicle and leave the scene (Id. at ¶¶ 34, 36). Instead, the plaintiff stood in the street and demanded that the defendants arrest Waldron for assault (Id. at ¶ 23).

Still, it is uncertain whether the plaintiff intended to cause, or recklessly created a risk of causing public inconvenience, annoyance or alarm. The plaintiff admits that he used some foul language and was upset by the defendants' refusal to arrest Waldron, but he denies he was being disruptive (Plaintiff's response to DSMF at ¶ 39). Instead, the plaintiff insists he was merely

stating his belief to the officers that Waldron assaulted him and should be charged (Id.).

The plaintiff also refutes the defendants' assertion that he did not comply with their orders to leave the area. According to the plaintiff, when the officers told him to leave the area a second time, he turned to get into his vehicle to leave (DSMF at ¶ 36 and plaintiff's response thereto). Further, it is unclear if other people were coming into the area at this time, as the defendants claim, or whether the scene was limited only to the previously-named actors, as the plaintiff claims (DSMF at ¶ 33 and plaintiff's response thereto).

Importantly, the question of probable cause in a civil rights action is generally one for the jury, especially where the probable cause determination rests on credibility conflicts. Merkle, 211 F.3d at 788; accord, Sharrar, 128 F.3d at 818 ("the issue of whether there was probable cause to make an arrest is usually a question for the jury"). Here, based on the conflicting testimony of the parties, the question of whether the defendants had probable cause to arrest the plaintiff for disorderly conduct is an issue for the trier of fact.

We must now determine if the defendants are entitled to qualified immunity on the plaintiff's claim of unlawful arrest. Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982).

To determine if a government official is entitled to qualified immunity, we assess the following questions: (1) whether the official violated a constitutional right of the plaintiff, and (2) whether that right was clearly established at the time of the incident, such that it would have been clear to a reasonable official that his conduct was unlawful. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). A Court has discretion to decide which of these two inquiries will be addressed

first in light of the circumstances in the case. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As to the first inquiry above, "we must ask whether '[t]aken in the light most favorable to the party asserting the injury,… the facts alleged show the officer's conduct violated a constitutional right'". Reedy, supra, 615 F.3d at 223, quoting Saucier, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, if "the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, … we must ask 'whether the right was clearly established… in light of the specific context of the case'". Reedy, 615 F.3d at 224, quoting Saucier, 533 U.S. at 201.

We have determined that a reasonable jury could find that the plaintiff's Fourth Amendment rights were violated by his warrantless arrest. Thus, we address the second inquiry of the qualified immunity analysis: whether the plaintiff's rights were "clearly established" at the time of the incident. Pearson, 555 U.S. at 232. The United States Supreme Court has counseled: "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations omitted).

Assuming the facts most favorable to the plaintiff, a reasonable officer would know that arresting the plaintiff would violate clearly established law. That is because the plaintiff asserts that he was arrested while complying with the defendants' orders to leave the scene, at which time he turned to get into his vehicle to leave and then stated: "This is a fuckin' joke. This is the reason that Beaver Falls is in the fuckin' condition that it is"; that upon making those statements, Officers Hiler and Seybert grabbed him and forcibly took him to the ground; and that he was handcuffed, put in a police car, and taken to the police station (Plaintiff's Declaration at ¶¶ 21-

10

25). While the plaintiff admits that he used foul language and was upset by the officers' refusal to arrest Waldron, he denies he was being disruptive (Plaintiff's response to DSMF at ¶ 39).

The law is well settled that a person cannot be lawfully arrested for disorderly conduct for merely using profane or vulgar language that does not cause or risk public turmoil. Clifton v. Borough of Eddystone, 824 F.Supp.2d 617, 626 (E.D.Pa. 2011) (listing cases); accord, Primrose v. Mellott, 2012 WL 2321384, *6 (M.D.Pa,, June 19, 2012). The law is also clearly established that a person cannot be lawfully arrested in retaliation for protected speech. Clifton, supra, 824 F.Supp.2d at 628-29 (citing cases). Accepting as true the plaintiff's recitation of facts, the defendants are not entitled to qualified immunity. Thus, summary judgment will be denied on Count IV.

Likewise, the defendants are not entitled to summary judgment on Counts I and II, which are premised on the plaintiff's First Amendment rights to free speech. In Count I, the plaintiff contends that the defendants violated his First Amendment rights when they arrested him for protesting the officers' refusal to charge Waldron with assault and for criticizing the Beaver Falls Police Department.

The defendants do not deny that the plaintiff's comments at issue, such as his demands that they arrest Waldron for assault and his claim that: "This is the reason that Beaver Falls is in the fuckin' condition it's in", is constitutionally protected speech. That is because "except for certain narrow categories deemed unworthy of full First Amendment protection -- such as obscenity, 'fighting words' and libel -- all speech is protected by the First Amendment." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004), citing R.A.V. v. St. Paul, 505 U.S. 377, 382-90 (1992). Certainly, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by

11

which we distinguish a free nation from a police state." City of Houston v. Hill, 482 U.S. 451, 462-63 (1987). Here, whether the defendants arrested the plaintiff for his comments in violation of his right to free speech is a question for the trier of fact.

In Count II, the plaintiff contends that the defendants retaliated against him for exercising his First Amendment free speech rights by arresting him without probable cause. To establish a First Amendment retaliation claim, a plaintiff must prove: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006).

As just discussed, the plaintiff engaged in constitutionally protected speech when he protested the defendants' refusal to arrest Waldron and criticized the Beaver Falls Police Department; hence, he established the first prong of his First Amendment retaliation claim. The plaintiff also has satisfied the second and third prongs of his retaliation claim, namely, retaliatory action and a causal link between his speech and the retaliation, as he claims that the officers used excessive force and arrested him immediately after he uttered his comments (Plaintiff's Declaration at ¶¶ 23-25).

In pressing for summary judgment on this claim, the defendants assert that they had probable cause to arrest the plaintiff. Courts hold that the existence of probable cause "prohibits a plaintiff from prosecuting a First Amendment retaliation claim." McKenna v. Schauer, 2009 WL 959869, *4 (M.D.Pa., Apr. 6, 2009) (citing cases); also see, Cvetko v. Derry Tp. Police Dept., 2010 WL 5110207, *8 (M.D.Pa., Sept. 16, 2010) (a retaliatory prosecution claim is defeated by the existence of probable cause). However, as previously discussed, a material question of fact exists as to whether the defendants had probable cause to arrest the plaintiff.

Accordingly, summary judgment is not appropriate on Counts I and II.[2]

An appropriate Order will be entered.

---

[2] Based on our prior discussion of the qualified immunity standard, the defendants are not entitled to qualified immunity on the plaintiff's First Amendment claims, as it would have been clear to a reasonable officer that arresting the plaintiff for engaging in constitutionally protected speech was unlawful.

O R D E R

AND NOW, this 11th day of July, 2012, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the defendants' motion for partial summary judgment (Document No. 33) is denied.

s/ROBERT C. MITCHELL<br>
United States Magistrate Judge